WO

## IN THE UNITED STATES DISTRICT COURT

## FOR THE DISTRICT OF ARIZONA

| | |
|---|---|
| Theresa K. Scholin, | No. CV-15-02334-PHX-GMS |
| Plaintiff, | **ORDER** |
| v. | |
| Commissioner of the Social Security Administration, | |
| Defendant. | |

Pending before the Court is the appeal of Plaintiff Theresa K. Scholin ("Scholin"), which challenges the Social Security Administration's decision to deny benefits. (Doc. 1.) For the reasons set forth below, this Court affirms the decision of the ALJ.

### BACKGROUND

On September 19, 2011, Theresa Scholin filed an application for disability insurance benefits, alleging a disability onset date of February 1, 2005. (Tr. 22.) Her claim was initially denied on January 20, 2012, and it was denied again upon reconsideration on November 21, 2012. (Tr. 22.) Scholin then filed a written request for a hearing and she testified before ALJ Patricia Bucci on January 3, 2014. (Tr. 22.) On March 13, 2014, the ALJ issued a decision finding Scholin not disabled. (Tr. 36.)

In evaluating whether Scholin was disabled, the ALJ undertook the five-step sequential evaluation for determining disability.[1]  (Tr. 12.)  At step one, the ALJ found that Scholin had not engaged in substantial gainful activity since her application date.  (Tr. 24.)  At step two, the ALJ determined that Scholin suffered from the following severe impairments:  obesity, diabetes mellitus, chronic dermatitis, chronic obstructive pulmonary disease ("COPD")/asthma, JOB syndrome, mild cervical degenerative disc disease, depressive disorder, and poly-substance abuse.  (Tr. 24.)  She also found that Scholin suffered from numerous nonsevere impairments, including status post right knee surgery, gastroesophageal reflux disease, irritable bowel syndrome, right shoulder disorder, restless leg syndrome, osteopenia, and hepatitis C. (Tr. 25.)  At step three, the ALJ determined that none of these impairments, either alone or in combination, met or equaled any of the Social Security Administration's listed impairments.  (*Id.*)

At that point, the ALJ reached step four and made a determination of Scholin's residual functional capacity ("RFC"),[2] concluding that Scholin could "perform light work as defined in 20 CFR 404.1567(b), except the Claimant should never climb ladders, ropes

---

[1]  The five-step sequential evaluation of disability is set out in 20 C.F.R. § 404.1520 (governing disability insurance benefits) and 20 C.F.R. § 416.920 (governing supplemental security income).  Under the test:

> A claimant must be found disabled if she proves: (1) that she is not presently engaged in a substantial gainful activity[,] (2) that her disability is severe, and (3) that her impairment meets or equals one of the specific impairments described in the regulations.  If the impairment does not meet or equal one of the specific impairments described in the regulations, the claimant can still establish a prima facie case of disability by proving at step four that in addition to the first two requirements, she is not able to perform any work that she has done in the past.  Once the claimant establishes a prima facie case, the burden of proof shifts to the agency at step five to demonstrate that the claimant can perform a significant number of other jobs in the national economy.  This step-five determination is made on the basis of four factors: the claimant's residual functional capacity, age, work experience and education.

*Hoopai v. Astrue*, 499 F.3d 1071, 1074–75 (9th Cir. 2007) (internal quotation marks and citations omitted).

[2]  RFC is the most a claimant can do despite the limitations caused by his impairments.  *See* S.S.R. 96–8p (July 2, 1996).

or scaffolds." (Tr. 27.) In making this finding, the ALJ found that Scholin's subjective testimony was "not entirely credible." (Tr. 28.) The ALJ gave little to no weight to the treating physicians, Drs. Drachler, Monroe, Ebner and Brown. (Tr. 33–34.) Instead, she relied on the testimony of state agency's reviewing physicians, Scholin's work history, her "generally unpersuasive appearance and demeanor while testifying at the hearing," and the "greater weight of the entire evidence of record" which demonstrated inconsistencies in Ms. Scholin's testimony and statements to her health care providers (Tr. 33–34.) However, she noted that "minimal weight is afforded to the mental assessments of these reviewing physicians, as greater weight is afforded to the treating notes and clinical findings, which reflect the claimant's mental impairment is indeed severe." (*Id.*)

The Appeals Council declined to review the decision. (Tr. 1–5.) Scholin filed the complaint underlying this action on November 17, 2015 seeking this Court's review of the ALJ's denial of benefits. (Doc. 1.) The matter is now fully briefed before this Court. (Docs. 12, 16.)

## DISCUSSION

### I.    Standard of Review

A reviewing federal court will only address the issues raised by the claimant in the appeal from the ALJ's decision.[3] *See Lewis v. Apfel*, 236 F.3d 503, 517 n.13 (9th Cir. 2001). A federal court may set aside a denial of disability benefits only if that denial is either unsupported by substantial evidence or based on legal error. *Thomas v. Barnhart*, 278 F.3d 947, 954 (9th Cir. 2002). Substantial evidence is "more than a scintilla but less than a preponderance." *Id.* (quotation omitted). "Substantial evidence is relevant evidence which, considering the record as a whole, a reasonable person might accept as adequate to support a conclusion." *Id.* (quotation omitted).

The ALJ is responsible for resolving conflicts in testimony, determining

---

[3] The ALJ's determinations that Scholin's diabetes, spinal degeneration, and obesity did not contribute to any disability were not challenged by the claimant in her opening brief. (Tr. 29–30; Doc. 12.)

credibility, and resolving ambiguities.  *See Andrews v. Shalala*, 53 F.3d 1035, 1039 (9th Cir. 1995).  "When the evidence before the ALJ is subject to more than one rational interpretation, we must defer to the ALJ's conclusion."  *Batson v. Comm'r of Soc. Sec. Admin.*, 359 F.3d 1190, 1198 (9th Cir. 2004).  This is so because "[t]he [ALJ] and not the reviewing court must resolve conflicts in evidence, and if the evidence can support either outcome, the court may not substitute its judgment for that of the ALJ."  *Matney v. Sullivan*, 981 F.2d 1016, 1019 (9th Cir. 1992) (citations omitted).

## II.   Analysis

### A.   The ALJ Did Not Make a Prejudicial Error in Rejecting the Opinions of the Treating Physicians.

"A treating physician's medical opinion as to the nature and severity of an individual's impairment must be given controlling weight if that opinion is well-supported and not inconsistent with the other substantial evidence in the case record."  *Edlund v. Massanari*, 253 F.3d 1152, 1157 (9th Cir. 2001), *as amended on reh'g* (Aug. 9, 2001); *see Lester v. Chater*, 81 F.3d 821, 830 (9th Cir. 1995), *as amended* (Apr. 9, 1996) ("As a general rule, more weight should be given to the opinion of a treating source than to the opinion of doctors who do not treat the claimant.").  If a treating physician's opinion is "not contradicted by another doctor, it may be rejected only for clear and convincing reasons."  *Lester*, 81 F.3d at 830.  An "ALJ need not accept a treating physician's opinion which is 'brief and conclusionary in form with little in the way of clinical findings to support [its] conclusion.' "  *Magallanes v. Bowen*, 881 F.2d 747, 751 (9th Cir. 1989) (quoting *Young v. Heckler,* 803 F.2d 963, 968 (9th Cir.1986)).  However, even if a treating physician's "assessments are of the 'check-box' form and contain almost no detail or explanation," they should not be dismissed if the "record *supports* [the physician's] opinions because they are consistent both with Claimant's testimony at the hearing and with [the physician's] own extensive treatment notes."  *Burrell v. Colvin*, 775 F.3d 1133, 1140 (9th Cir. 2014).

/ / /

If the treating physician's opinion is contradicted by another doctor, the ALJ still cannot reject the treating physician's opinion unless she provides "specific and legitimate reasons supported by substantial evidence in the record." *Lester*, 81 F.3d at 831 (internal quotations omitted). "Sheer disbelief is no substitute for substantial evidence," and thus the ALJ must specify what evidence she is relying on to reject the treating physician's opinion. *Benecke v. Barnhart*, 379 F.3d 587, 594 (9th Cir. 2004). "The opinion of a nonexamining physician cannot by itself constitute substantial evidence that justifies the rejection of the opinion of either an examining physician *or* a treating physician." *Lester*, 81 F.3d at 831. The ALJ may cite to diagnostic test results, contrary reports from examining physicians, and "testimony from the claimant that conflicted with her treating physician's opinion" to provide specific and legitimate reasons for rejecting the opinion of a treating physician. *Id.* at 831.

If it is determined that an ALJ made an error while considering the weight of a treating physician's opinion, the next step is to determine whether the error was prejudicial. *See Carmickle v. Comm'r, Soc. Sec. Admin.*, 533 F.3d 1155, 1162 (9th Cir. 2008) (applying the harmless error standard after determining that two of the ALJ's reasons supporting his adverse credibility finding were invalid). Ninth Circuit precedents "do not quantify the degree of certainty needed to conclude that an ALJ's error was harmless." *Marsh v. Colvin*, 792 F.3d 1170, 1173 (9th Cir. 2015). The general rule is that an error is harmless where a court can "conclude from the record that the ALJ would have reached the same result absent the error." *Molina v. Astrue*, 674 F.3d 1104, 1115 (9th Cir. 2012). Furthermore, "the more serious the ALJ's error, the more difficult it should be to show the error was harmless." *Id.*

### 1.    Dr. Drachler

On April 29, 2013, Dr. Drachler, Ms. Scholin's treating pulmonologist, filled out a checkbox questionnaire in which he concluded that Ms. Scholin was not able to sustain a normal work position due to the functional limitations caused by her pulmonary

conditions.[4]  (Tr. 1414.)  Dr. Drachler found that Ms. Scholin could not sit or stand for more than an hour at a time during an eight hour work day.  (*Id.*)  She also could not lift or carry more than five pounds at a time, and her symptoms were likely to cause frequent interruptions throughout her work day.  (Tr. 1412–13.)  Ultimately, Dr. Drachler opined that Ms. Scholin's conditions would require her to be absent from work more than three times a month.  (Tr. 1413.)  The ALJ rejected the opinion of Dr. Drachler because the ALJ found that 1) the claimant did not see Drachler regularly, 2) Drachler relied too heavily on the claimant's subjective reports of symptoms, 3) Drachler's findings were inconsistent with the claimant's "admitted daily activities," and 4) Drachler's findings were contradicted by the opinions of other examining and nonexamining physicians for the state agency.  (Tr. 33–34.)

Drachler's findings were contradicted by the state agency physicians, and thus the ALJ needed to provide "specific and legitimate reasons supported by substantial evidence in the record." *Lester*, 81 F.3d at 831 (internal quotations omitted).  However, the fact that his opinion was contradicted by the state agency physicians "cannot by itself constitute substantial evidence that justifies the rejection of the opinion of either an examining physician *or* a treating physician." *Id.*

The ALJ supported her reasoning by other substantial evidence in the record, and thus she did not err in discrediting Dr. Drachler's findings.  Dr. Drachler was the claimant's treating physician for her asthma and COPD for over six years.  (Tr. 1534.)  However, the ALJ noted that his records indicate that his interactions with Scholin were intermittent and that there were long lapses in treatment, (Tr. 29, 833.)  Frequency of examination is a valid factor to consider in determining how much weight to give a medical opinion.  *See* 20 C.F.R. 416.927(c)(2)(ii) ("Generally, the longer a treating source has treated you and the more times you have been seen by a treating source, the more weight we will give to the source's medical opinion."). The ALJ further notes that

---

[4] Just a month after Dr. Drachler completed his assessment and determined that Ms. Scholin was severely limited, Ms. Scholin told mental health providers that she was the primary caretaker of her fiancé's parents. (Tr. 1451.)

while she rarely met with Dr. Drachler, "[t]he claimant was regularly treated through her primary care physician for acute exacerbations of COPD and, despite these exacerbations she continued smoking cigarettes." (Tr. 29.) Dr. Drachler notes in January of 2012 that Ms. Scholin quit smoking "about 6 weeks ago." (Tr. 831.) Yet Ms. Scholin herself testified at the hearing before the ALJ that she didn't actually quit smoking until "almost a month" prior to the hearing in 2014. (Tr. 49, 60.) To the extent that Dr. Drachler relied on Ms. Scholin's assertion that she quit smoking in 2012 to form his opinions regarding her limitations in 2013, he relied on information that is contrary to the record—with Ms. Scholin's own sworn testimony—and the ALJ did not err in considering this inconsistency. *See Lester*, 81 F.3d at 831 (stating that an ALJ may rely on "contrary reports from examining physicians, and on testimony from the claimant that conflicted with her treating physician's opinion" to discredit a treating physician"); *Morgan v. Comm'r of Soc. Sec. Admin.*, 169 F.3d 595, 601 (9th Cir. 1999) (ALJ may consider whether the claimant's activities are inconsistent with the limitations outlined in a treating physician's opinion); *Magallanes v. Bowen*, 881 F.2d 747, 751 (9th Cir. 1989) (explaining that an ALJ may meet the burden of providing specific, legitimate reasons "by setting out a detailed and thorough summary of the facts and conflicting clinical evidence, stating his interpretation thereof, and making findings." (internal quotations and citations omitted)). Inconsistencies between the treating physician's opinion and the objective medical record are also valid factors to weigh when considering how much weight to assign to the treating physician's opinion. *See Lester*, 81 F.3d at 831 (contradictions between the medical evidence and the treating physician's opinion is a valid consideration); 20 C.F.R. § 416.927(c)(4) ("Generally, the more consistent a medical opinion is with the record as a whole, the more weight we will give to that medical opinion.") The ALJ cited to medical records reflecting Scholin's pulmonary function testing, which demonstrated "moderately severe airway obstruction" in October 2012 had improved in both December 2012 and October 2013 to show only "moderate obstruction." (Tr. 29.) These inconsistences are valid considerations, and the ALJ

provided sufficient evidence from the record to support her assertions.

The ALJ also discredited Drachler's opinion by stating that his opinion was "unsupported by the claimant's admitted daily activities." (Tr. 33.) Among those daily activities the ALJ found that Ms. Scholin was the primary caregiver for her fiancé's disabled parents with whom she resided. (Tr. 31, 32, 902, 1451.) In making this finding, the ALJ cited to Ms. Scholin's mental health care treatment notes with Terros from November 2011 and May 2013, in which Ms. Scholin told her counselor that she lived with her fiancé and was the primary caregiver for his disabled parents. (Tr. 902, 1451). Further, as the ALJ noted, in her function report filled out in December 2011 Ms. Scholin identified herself as a caregiver for Terry and John Ruth—presumably her fiancé's parents—for whom she made appointments and sometimes prepared lunch and dinner. (Tr. at 302).[5]   The ALJ noted that this activity as well as her ability to drive independently, utilize public transportation, prepare simple meals, do laundry, go out alone, shop outside the home on a weekly basis, pay bills, count change, handle a savings account and use a checkbook indicated that Scholin was not as limited as the limitations in Drachler's opinion indicated.[6]  The ALJ further noted that "[t]he physical and mental capabilities necessary to performing many of the[se] tasks . . . replicate those necessary for obtaining and maintaining employment." (Tr. at 32.)

Inconsistencies between a claimant's admitted daily activities and a treating physician's opinion is an appropriate factor to consider while determining how much weight to give a treating physician's opinion. *See Morgan*, 169 F.3d at 601 (favorably

---

[5] In her hearing testimony Ms. Scholin denied providing care for the disabled parents of her fiancé. Rather she testified that she stayed in her room and had provided no services or work since 2007. (Tr. at 57–58). Yet the ALJ was entitled to rely on the Claimant's treatment records and her function report, both of which were admitted in evidence, in finding to the contrary. Given these records, the ALJ had an adequate evidentiary basis on which to reject Ms. Scholin's testimony that she was not the primary caregiver to her fiancé's parents.

[6] The ALJ included other activities that Scholin participated in on a daily basis, including watching movies, grooming herself, and spending time with others. (Tr. 32.) However, the Court does not find these activities to be indicative of an ability to work or contradictory with Drachler's finding of disability. *See generally Garrison v. Colvin*, 759 F.3d 995, 1014–15 (9th Cir. 2014).

referring to the ALJ's consideration of the inconsistencies between the treating physician's findings of "marked limitations" and the claimant's admitted activities). Here, the ALJ noted Scholin's daily activities and their inconsistency with Scholin's alleged medical impairments early in her opinion. (Tr. 32.)   The ALJ found that these daily activities were inconsistent with the "severe physical and mental impairments" reflected in parts of her medical record, (*Id.*), and further found them as a basis for discounting Dr. Drachler's opinion.   (*See* Tr. 33 ("Moreover, this opinion remains unsupported by the claimant's admitted activities of daily living.").)   Therefore, the ALJ did not err in considering the inconsistencies between Scholin's daily activities and Drachler's findings while determining how much weight to give his opinion.

Based on the present record this Court cannot conclude, however, that the ALJ adequately  supported her assertion that Drachler relied too heavily on the claimant's subjective reports.  "An ALJ may reject a treating physician's opinion if it is based to a large extent on a claimant's self-reports that have been properly discounted as incredible," but this generally applies where there is "little independent analysis or diagnosis." *Tommasetti v. Astrue*, 533 F.3d 1035, 1041 (9th Cir. 2008).   Unlike *Tommasetti*, the record in this case reflects that Scholin was diagnosed with asthma and COPD, which were verified through diagnostic tests beyond the claimant's self-reported symptoms. (Tr. 429–433, 515–16, 519, 840–41, 1535–46.)  Further, the reports indicate at the least that she suffered at least some episodes of "acute COPD exacerbation." (Tr. 429–433.)   It was therefore improper to assert that Drachler relied too heavily on Scholin's self-reports while forming his medical opinion when there are at least a few verified instances of "acute COPD exacerbation" supported by the record.

Even so, however, that error was not prejudicial.  The ALJ relied on other proper evidence in the record to find that Drachler's medical opinion should be given little weight.  Specifically, she noted that Scholin did not see Dr. Drachler frequently, that Ms. Scholin did not keep treatment appointments with Dr. Drachler, that she ignored treatment advice and continued smoking, and that Scholin's daily activities, including

being the principal caregivers for her fiancé's parents, were inconsistent with his findings.  (Tr. 33.)  Given that the ALJ had other legitimate reasons for discrediting Drachler's medical opinion, this Court can conclude from the record that the result was unchanged by the ALJ's error.  *Molina*, 674 F.3d at 1115.  The ALJ's error in asserting that Drachler relied too heavily on Scholin's self-reports is therefore harmless, and does not merit a remand.

### 2. Dr. Monroe

Dr. Monroe filed out a checkbox questionnaire opining that Ms. Scholin cannot sit or stand for more than an hour during an eight-hour work day and is essentially precluded from obtaining employment due to her medical conditions, specifically her chronic dermatitis and COPD.  (Tr. 1030, 1032.)  Dr. Monroe also found that Scholin cannot lift or carry more than five pounds at a time.  (Tr. 1032.) The ALJ discredited the opinion of Scholin's primary care physician, Dr. Monroe, because she found that 1) the opinion that Scholin was disabled due to dermatitis, COPD and asthma was unsupported by the medical evidence of record, including the physician's own treating notes, 2) his opinion was internally inconsistent and 3) the course of treatment suggested by Dr. Monroe was inconsistent with his description of Scholin's limitations.  (Tr. 33.)

In rejecting Scholin's claim that she was disabled by her dermatitis, the ALJ properly noted that the objective medical record as well as Scholin's activities were inconsistent with his finding of severe limitations.  *See Lester*, 81 F.3d at 831 (explaining that "conflict with testimony from the claimant himself and with medical reports contained in the record" is a valid reason for rejecting a treating physician's medical opinion). The objective medical record indicated that Scholin's medical conditions improved under treatment, to the point where her conditions did not severely limit her behavior or activities. For example, Scholin's markedly elevated IgE level of above 6000 that resulted in her diagnosis of JOB syndrome decreased to 4,500 under appropriate care, (Tr. at 30, 34, 890, 1018).  The ALJ further noted that although Scholin denied any adverse side effects from her dermatitis medication, she was non-compliant with her

treatment regimen, a choice that is at odds with an individual suffering from severely limiting medical conditions. (Tr. at 30, 34, 882, 1020, 1023.)  And that, further, Ms. Scholin failed to attend scheduled appointments which resulted in a gap of treatment from May 12 through January 2013. (Tr. 1403.); *see also* 20 C.F.R. § 416.927(c)(2) (listing "[l]ength of the treatment relationship and the frequency of examination" as valid factors to consider when weighing a treating physician's testimony).   In sum, both the objective medical record as well as Scholin's repeated decisions not to follow her treatment regime are at odds with Dr. Monroe's findings, and inconsistency within the record is a valid consideration for the ALJ to weigh when determining how much weight to assign to a treating physician's medical opinion.  *See Andrews v. Shalala*, 53 F.3d 1035, 1043 (9th Cir. 1995) (inconsistencies in the record and a treating physician's findings are valid reasons for discrediting a treating physician's opinion).

The presence of discrepancies between a treating physician's treatment notes and his medical assessment is a valid reason for discrediting his opinion.  *See Bayliss v. Barnhart*, 427 F.3d 1211, 1216 (9th Cir. 2005) (permitting an ALJ to discredit a treating physician's opinion based on contradictions between his findings and his treatment notes).  To the extent that the ALJ limits her acceptance of Dr. Monroe's opinion based on its inconsistency with his own treatment notes, she does note that "treating physicians consistently observed that she appeared well, alert, and in no acute distress.  . . . As well, physical examinations were typically fairly unremarkable."  (Tr. 30, 736, 741, 743, 748, 752, 754, 1203, 1212, 1215, 1223, 1225, 1477, 1480, 1488, 1490.)  In making this observation the ALJ cited to Dr. Monroe's treating notes from 2011 onward which in fact reflect no serious malady from claimant.  Rather, although she now claims disability from 2005 based on her COPD, she consults Dr. Monroe in 2011 for minor matters in which her functionality seems to be reaffirmed, and Dr. Monroe routinely notes that she is in no apparent distress ("nad").  (*See, e.g.* Tr. 730, 736, 748, 752, 754, 757, 1212, 1215, 1223, 1225, 1477, 1480, 1488, 1490.)   These records are inconsistent with Dr. Monroe's finding of severe limitation, and the ALJ properly rejected his opinion based upon them.

As it pertains to the COPD and asthma, the ALJ rejected Scholin's claim that she was disabled by her COPD and asthma for the reasons set forth in her decision and reviewed in more complete detail above.   (Tr. at 29, 33–34.)

However, based on the record currently before the Court, the ALJ did not adequately support her assertion that the course of treatment suggested by Dr. Monroe was inconsistent with his description of Scholin's limitations.  (Tr. 33.)  It is unclear exactly what the ALJ meant by asserting that Dr. Monroe did not suggest a course of treatment consistent with the claimant's alleged limitations: in the record, Dr. Monroe's assessment lists several medications taken by the claimant, as well as their side effects. (Tr. 1034.)  While the ALJ did go through the medical record in detail earlier in her opinion, she did not explain why the medications assigned by Dr. Monroe and listed in his assessment were inconsistent with Scholin's limitations, or what treatment "one would expect for a totally disabled individual." (Tr. 28.)  Rather, the only support given to bolster this statement is a general citation to Dr. Monroe's assessment.  (Tr. 33.); *See Thomas v. Barnhart*, 278 F.3d at 954 ("Substantial evidence is relevant evidence which, considering the record as a whole, a reasonable person might accept as adequate to support a conclusion.").[7]  Dr. Monroe did prescribe a course of treatment to Scholin, and in the absence of further explanation, it is unclear why his course of treatment was inconsistent with his finding of severe limitation.  Therefore, the ALJ erred by failing to provide adequate evidence for relying on this factor, even though it could be a valid consideration when adequately explained. *Lester*, 81 F.3d at 831

Yet the ALJ did provide other substantial evidence to support other specific and legitimate reasons for discrediting Dr. Monroe's opinion, and thus this error was not prejudicial.   As explained above, the ALJ relied on inconsistencies in the record, specifically the claimant's activities and the objective medical evidence.  The ALJ also properly explained that Dr. Monroe's assessment was internally inconsistent because it

---

[7] In any event much of Ex. 25F, to which the ALJ generally cites to support this insufficiently explained statement, is not legible and some of the pages are entirely blank. (Tr. 1024–1040.)

1    asserted that the claimant is "incapable of even [a] low stress" work environment and yet

2    also "capable of [a] low stress" work environment."   (Tr. 33, 1036.)   The presence of

3    internal inconsistencies within a physician's opinion is a legitimate reason for

4    discrediting their opinion.[8]   *Ghanim v. Colvin*, 763 F.3d 1154, 1161 (9th Cir. 2014) ("A

5    conflict between treatment notes and a treating provider's opinions may constitute an

6    adequate reason to discredit the opinions of a treating physician or another treating

7    provider.").   Because the ALJ provided specific and legitimate reasons to discredit Dr.

8    Monroe's opinion, that were supported by substantial evidence in the record, the Court

9    can determine that the errors did not alter the ALJ's ultimate determination, and thus the

10   ALJ's other error in weighing Dr. Monroe's testimony was not prejudicial.  *Molina*, 674

11   F.3d at 1115.

12                 **3.    Dr. Ebner**

13          The ALJ dismissed the opinion of Dr. Ebner, the claimant's treating dermatologist,

14   because he claimed to treat the claimant monthly and reported "poorly controlled

15   symptoms that would result in an inability to work," but failed to mention the claimant's

16   "noncompliance or lapse in care for almost one year." (Tr. 34.)   The ALJ also discredited

17   Dr. Ebner's opinion because it was conclusory and unsupported by the record.  (Tr. 34.)

18          The ALJ properly discredited Dr. Ebner's opinion due to his failure to note that

19   the claimant neglected to keep her appointments for almost a year, and that when she did

20   take her medication, she improved.  (Tr. 34.)   Impairments that can be treated effectively

21   through treatment are not grounds for disability.  *Warre v. Comm'r of Soc. Sec. Admin.*,

22   439 F.3d 1001, 1006 (9th Cir. 2006).   Furthermore, Ebner's assessment, detailing poorly

23   controlled symptoms that preclude work, is arguably inconsistent with his earlier reports

24   of success with medication, particularly considering Ebner's failure to mention his

25   patient's noncompliance with his treatment plan in his assessment.  (Tr. 34.) Because this

26   _____

27          [8] Scholin contests this interpretation of Dr. Monroe's medical opinion and instead
     provides her own, but interpretation of the medical record is within the province assigned
28   to the ALJ, not this Court. Therefore, because the "the evidence can support either
     outcome," this Court accepts the interpretation provided by the ALJ. *Matney*, 981 F.2d at
     1019.

is a rational interpretation of the record, "we must defer to the ALJ's conclusion." *Batson*, 359 F.3d at 1198.

The ALJ also noted that Ebner's assessment was "quite conclusory" and provided "very little explanation" for his reasoning.   An "ALJ need not accept a treating physician's opinion which is 'brief and conclusionary in form with little in the way of clinical findings to support [its] conclusion.' " *Magallanes*, 881 F.2d at 751 (quoting *Young v. Heckler,* 803 F.2d 963, 968 (9th Cir.1986)).   The ALJ noted the inconsistencies between Dr. Ebner's "check-box" assessment and treating notes, and thus this is not a situation where the "record *supports* [the physician's] opinions because they are consistent both with Claimant's testimony at the hearing and with [the physician's] own extensive treatment notes."   *Burrell*, 775 F.3d at 1140. Therefore, the ALJ properly provided specific and legitimate reasons for discrediting Dr. Ebner's opinion.

### 4.   Dr. Brown

The ALJ discredited Dr. Brown, Scholin's treating psychiatrist, because she determined that his findings were "quite conclusory" and "unsupported by this physician's own [clinical] findings," including Scholin's mental status examinations and the Global Assessment of Functioning ("GAF") scores. (Tr. 33.)   The ALJ did a longitudinal review of Plaintiff's mental health records and noted with citations to the record that "the claimant has not offered the same complaints to treating professionals as she has in connection with this application."  (Tr. 30.)  The ALJ noted for example that she avoided people due to her skin condition not her anxiety, and related to other treating physicians that her problems are primarily environmentally related.  (*Id.*)  Treating notes through the period reflected that she had no evidence of anxiety or depression and that she maintained compliance with psychotropic medication and that she denied any side effects.  (Tr. 30) Ms. Scholin claimed that her mental health was stable in 2012, and she often failed to attend follow-up appointments, "which suggests that her symptoms were not as severe as alleged."  (Tr. 31; 792–793.)  The ALJ also noted that while "the claimant's symptoms increased for brief periods, this was attributed to stress and

relationship issues."  (Tr. 31.)  This finding is reflected in the ALJ's limitation of the claimant to "lower stress jobs."  (Tr. 27.)

The ALJ properly discredited Dr. Brown's testimony because it was contrary to 1) Dr. Brown's mental status examinations and 2) the GAF scores of record.  The ALJ noted that Dr. Brown's mental status examinations of the claimant were "fairly unremarkable." (Tr. 33, 1045–46, 1290–91.) Earlier in her opinion, she also noted that Scholin's GAF scores ranged from 50 to 55 ranging from some mental impairment to moderate symptoms of impairment.  (Tr. 31.)  The ALJ noted that GAF scores are somewhat limited due to their global nature, but they remain a relevant factor in determining a claimant's mental health.  (*Id.*)  These inconsistencies, when coupled with Brown's failure to "provide any specific work limitations," constituted specific and legitimate reasons for discrediting Brown's opinion, and therefore the ALJ did not err in doing so.

## B.  The ALJ Provided Specific, Clear and Convincing Reasons for Discrediting Scholin's Testimony

Once a claimant establishes that objective medical evidence illustrates an impairment that could reasonably cause the symptoms alleged, "and there is no evidence of malingering, 'the ALJ can reject the claimant's testimony about the severity of her symptoms only by offering specific, clear and convincing reasons for doing so.' " *Garrison*, 759 F.3d at 1014–15 (quoting *Smolen v. Chater*, 80 F.3d 1273, 1282 (9th Cir. 2006)).  This is the most stringent standard required in social security cases.  *Id.*  In determining whether the claimant's testimony regarding her symptoms is credible, the ALJ can consider a multitude of factors, including:

> (1) ordinary techniques of credibility evaluation, such as the claimant's reputation for lying, prior inconsistent statements concerning the symptoms, and other testimony by the claimant that appears less than candid; (2) unexplained or inadequately explained failure to seek treatment or to follow a prescribed course of treatment; and (3) the claimant's daily activities.

*Smolen v. Chater*, 80 F.3d at 1284.  The ALJ can also consider "the claimant's prior work

record . . . and observations by treating and examining physicians and third parties about the claimant's symptoms and their effects." *Id.* at 1285.

The ALJ in this case fully explained her reasoning for finding the claimant's testimony "not entirely credible." (Tr. 28.) The ALJ provided a detailed summary of the Ms. Scholin's medical file, including the objective laboratory findings as well as her treating physicians' observations that were inconsistent with Ms. Scholin's symptom testimony and demonstrated favorable response to Scholin's compliance with the Doctor's prescribed treatment, when she chose to follow it. (Tr. 28–31.) The ALJ noted that despite Scholin's testimony asserting debilitating COPD/asthma and diabetes, Scholin told her treating physicians that she did not check her blood sugar anymore and, despite having told her doctor's otherwise, she testified that she continued to smoke up until a few weeks before her January 2014 hearing. (Tr. 29.)[9] This sort of inconsistency between the claimant's compliance with her treatment regimen and her testimony is acceptable for the ALJ to consider during the credibility analysis. *Smolen*, 80 F.3d at 1284. Likewise, the ALJ noted that Scholin "failed to attend scheduled appointments, which resulted in a gap of treatment from May 2012 until January 2013" for her skin disorder. (Tr. 30.) The ALJ further noted large gaps in the treatment of her diabetic condition, (Tr. 29), her lung disorders, (Tr. 29), and her mental health, (Tr. 30–31). These large and unexplained gaps in treatment were inconsistent with the level of discomfort Scholin alleged, and they did "not work in the claimant's favor" during the ALJ's credibility analysis. (Tr. 30.)

---

[9] In her opening brief Ms. Scholin reiterates the false assertion—apparently also made to Dr. Drachler in early 2012—that she quit smoking sometime in December 2011. (*See* Doc. 12 at 3 ("When next seen on January 31, 2012, Ms. Scholin had quit smoking about six weeks earlier")); *see also* Dr., Drachler's February 1, 2012 letter to Dr. Monroe (Tr. 831 ("She quit smoking about six weeks ago").) Nevertheless at her hearing on January 3, 2014 Ms. Scholin testified in response to a question by the ALJ that she had not smoked since December 9, 2013, "so almost for a month" prior to the hearing. (Tr. 60.) Thus, it is not clear that Ms. Scholin ever quit smoking. Despite her earlier statement to Dr. Drachler, the ALJ certainly had the ability based on Ms. Scholin's hearing testimony to find that Ms. Scholin had not quit smoking since December 2013. Based on that same testimony, the Court rejects the assertion in Scholin's brief that she quit smoking in December 2011.

The ALJ also relied on "observations by treating and examining physicians" in making her decision.  *Id.* at 1285.  For example, the ALJ cited to several entries in the record and noted that contrary to Scholin's testimony, her treating physicians' notes "consistently observed that she appeared well, alert, and in no acute distress" during her examinations.  (Tr. 30.)  The ALJ noted that this "observation is only one among many being relied upon in reaching a conclusion," but the "healthy and comfortable appearance demonstrated by the claimant is in sharp contrast" to the debilitating discomfort she alleges.  (Tr. 20.)  The ALJ also cited to an examining physician, Dr. Bowen, who "did not believe that the claimant was being entirely honest" to him during his exam. (Tr. 32.)  Dr. Bowen's assessment specifically noted that Ms. Scholin "was very dramatic and seemed to be embellishing," and questioned Ms. Scholin's honesty while responding to his questions.  (Tr. 816.)  Relying on the observations of an examining physician is an acceptable method of determining a claimant's credibility, and therefore the ALJ did not err in considering Dr. Bowen's notes while assessing Ms. Scholin's credibility.  *Smolen v. Chater*, 80 F.3d at 1285.

The ALJ noted that Scholin's reported daily activities were inconsistent with her testimony. "ALJs must be especially cautious in concluding that daily activities are inconsistent with testimony about pain, because impairments that would unquestionably preclude work and all the pressures of a workplace environment will often be consistent with doing more than merely resting in bed all day." *Garrison*, 759 F.3d at 1016. However, in this case the ALJ found that Scholin's reported abilities to perform the specific daily duties she mentioned, including acting as a care giver for her fiancé's parents, "replicated those necessary for obtaining and maintaining employment."  (Tr. 32.) Furthermore, the ALJ also noted that Scholin's daily activities often shifted.  (Tr. 31.)  For example, during the hearing she testified that she stays in her room at all times, but the record illustrates that is not so, as she has also reported that she serves as the caregiver for her fiancé's parents. (Tr. 31.)  Inconsistencies such as these are relevant inquiries into the claimant's credibility, and the ALJ did not err in considering them or in

the conclusions she reached because of them.

### C.      The ALJ Did Not Err in Relying on Vocational Testimony

"A claimant establishes a prima facie case of disability by showing that his impairments prevent him from doing his previous job. The burden then shifts to the Secretary to show that the claimant can do other substantial gainful activity considering his age, education, and work experience."  *DeLorme v. Sullivan*, 924 F.2d 841, 849–50 (9th Cir. 1991) (internal citations omitted).  If an ALJ chooses to rely on a vocational expert when making this determination, "the hypothetical [posed to the vocational expert] must consider all of the claimant's limitations." *Light v. Soc. Sec. Admin.*, 119 F.3d 789, 793 (9th Cir. 1997), *as amended on reh'g* (Sept. 17, 1997) (quoting *Andrews v. Shalala,* 53 F.3d 1035, 1044 (9th Cir.1995)).   "If the hypothetical does not reflect all the claimant's limitations. . . . the expert's testimony has no evidentiary value to support a finding that the claimant can perform jobs in the national economy."  *DeLorme*, 924 F.2d at 850.   However, the Ninth Circuit recently clarified that that "an ALJ's assessment of a claimant adequately captures restrictions related to concentration, persistence, or pace where the assessment is consistent with restrictions identified in the medical testimony." *Stubbs-Danielson v. Astrue*, 539 F.3d 1169, 1174 (9th Cir. 2008).

The ALJ found that "with regard to concentration, persistence, or pace, the claimant has moderate difficulties." (Tr. 26.)  She further found that Scholin cannot perform any past relevant work.  (Tr. 35.)  Therefore, the burden shifted "to the Secretary to show that the claimant can do other substantial gainful activity considering [her] age, education, and work experience."  *DeLorme*, 924 F.2d at 849–50 (internal citations omitted).  In finding that the claimant could perform other jobs in the national economy, the ALJ relied on a vocational expert's testimony.  (Tr. 35.)  The ALJ did not include all of Scholin's limitations, namely with regards to "concentration, persistence and pace," in the hypothetical she posed to the expert.  (Tr. 73.)  However, as in *Stubbs-Danielson*, although the ALJ did not include the "restrictions related to concentration, persistence, or pace," she did include other limitations within her hypothetical that are "consistent with

restrictions in the medical testimony." *Stubbs-Danielson*, 539 F.3d at 1174.  The ALJ's hypothetical stated that individual in question must be restricted to "lower stress" work that is "simple, routine and repetitive," and that involved only "occasional decision making."  (Tr. 73.)  This is in accord with the medical testimony in the record.  For example, the state agency physicians that met with Scholin did not note any mental limitations in regards to her concentration.  (Tr. 809–819, 1109–1112.)  Although Dr. Brown noted that Scholin struggled with "maintaining concentration for extended periods," (Tr. 1389), the ALJ properly discredited his medical opinion, and thus it did not carry controlling weight in her analysis. Therefore, as in *Stubbs-Danielson*, the "ALJ's assessment of a claimant adequately captures restrictions related to concentration, persistence, or pace where the assessment is consistent with restrictions identified in the medical testimony," and thus the ALJ did not rely on flawed vocational expert testimony. *Stubbs-Danielson*, 539 F.3d at 1174.

**CONCLUSION**

While the ALJ made minor errors while determining the weight she should assign to the treating physicians in this case, none of these were prejudicial.  Therefore, the ALJ's decision is affirmed.

**IT IS THEREFORE ORDERED** that the ALJ's decision is **AFFIRMED**.  The Clerk of Court is directed to terminate and enter judgment accordingly.

Dated this 6th day of March, 2017.

Honorable G. Murray Snow
United States District Judge